In re Henry ZAMOST, dba Foremost Home & Remodeling, Inc., dba Foremost Builders, and Foremost Builders Inc., Debtors.

Juan Chargulaf DIEGO, and Rosita Santos Diego, Plaintiffs,

v.

Henry ZAMOST, Henry Zamost dba Foremost Builders, Foremost Home & Remodeling, Inc., dba Foremost Builders, Harold H. Cohen, Thelma Cohen, Aames Home Loan Co. dba Aames Home Loan, Jomar Investment Co., Defendants.

Bankruptcy Nos. 80–01056–M, 80–01054–P. Adversary No. C80–0317–P.

United States Bankruptcy Court, S. D. California.

Dec. 29, 1980.

William L. Fischbeck, Marsh, Graves, Fischbeck & Welch, El Cajon, Cal., for plaintiffs.

Ronald L. Liebow, Volk, Newman, Marsh, Gralla & Karp, Los Angeles, Cal., for defendants Harold H. & Thelma Cohen, Aames Home Loan Co., and Jomar Investment Co.

## BACKGROUND

ROSS M. PYLE, Bankruptcy Judge.

Defendants Harold H. & Thelma Cohen, ("the Cohens"), Aames Home Loan Co., ("Aames"), and Jomar Investment Company, ("Jomar"), bring their Motion to Dismiss upon three grounds: first, that the Bankruptcy Court lacks subject matter jurisdiction; second, that, since the causes of action alleged against debtor, Foremost Home & Remodeling, Inc., cannot be exempted from discharge due to its corporate status, there will be no effect upon the debtor and consequently plaintiffs' causes of action against Aames, Cohen and Jomar are unrelated to the bankruptcy proceedings; and, alternatively, third, that, if the Court deems it has jurisdiction, it should abstain in the interest of justice, leaving the questions raised by the pleadings to the determination of the California courts.

## ALLEGED FACTS

The facts as outlined in the pleadings present the following situation:

The action arose out of a home remodeling contract entered into between the plaintiffs and the debtor Zamost and the debtor Foremost Home and Remodeling Builders Inc., ("Foremost"), both debtors having the fictitious business name of Foremost Builders. Defendant Aames arranged a loan for plaintiffs from the Cohens to finance the remodeling contract. The $17,500.00 loan was secured by a Deed of Trust on plain-

tiffs' residence. Defendant Jomar is Trustee under the Deed of Trust.

The complaint alleges that Zamost arranged for the loan through Aames in favor of the Cohens and that Aames, acting under the direction of Zamost, prepared escrow instructions to itself as escrow holder authorizing disbursement of the net loan proceeds of $12,915.05 to Zamost and Foremost directly without further authorization from plaintiffs. Aames then disbursed the entire balance to Zamost and Foremost. Plaintiff alleges that Zamost fraudulently misrepresented certain facts to the plaintiffs to induce them to execute the escrow amendment authorizing the direct disbursement of funds. Thereafter Zamost purportedly utilized the funds other than on the remodeling project. Plaintiffs allege damages resulting from the alleged fraud, including a request for punitive damages and damages arising from necessary repairs caused by the poor quality of workmanship on their property. Plaintiffs also pray that their claims against the debtors be exempted from discharge.

Allegations in the second cause of action tie defendants Aames and Cohen to Zamost through the theory of agency, and rescission of the loan transaction is sought. Jomar is brought in as a necessary party since it has recorded a Notice of Default on the Deed of Trust and threatens to foreclose upon the property unless enjoined by this Court.

Plaintiffs' last cause of action alleges that defendant Aames had certain fiduciary duties to plaintiffs as escrow holder and that the disbursal of the entire loan balance to Zamost and Foremost breached those duties. Compensatory and punitive damages are prayed for against Aames.

## DISCUSSION

### 1. *Jurisdiction of the Subject Matter*

■ Plaintiffs and defendants are in accord that 28 U.S.C. § 1471 grants the Bankruptcy Court original non-exclusive jurisdiction of all civil proceedings which arise under or are related to cases arising under Title 11. Defendants disagree that this

pervasive jurisdiction applies to this case. They argue that there is only a tangential involvement of the plaintiff and the defendants other than Zamost and Foremost with the transactions which give rise to this complaint.

Defendants assert that any success of plaintiffs against Zamost and Foremost Builders would not affect the administration of their estates, and that the debts which plaintiffs seek to insulate from discharge in bankruptcy are not debts owed by defendants Aames, Cohen or Jomar. In addition, they urge that should plaintiffs obtain an exemption from discharge in bankruptcy of their claims against Zamost and Foremost Builders, that result will have no bearing on whether or not they obtain any further recovery against Aames, the Cohens and/or Jomar. Defendants conclude that, since any judgment against the defendants not involved in the bankruptcy would have no impact upon the administration of the debtors' estates, there is no *nexus* upon which to base the jurisdiction of this Court.

■ This Court does not subscribe to the narrow view of its jurisdictional grant from Congress which defendants urge. Plaintiffs make the point that one of the items of relief which is sought is that the loan transaction be rescinded. Plaintiffs contend that all of the defendants are necessary parties to that relief. The point appears to be well taken. Furthermore, plaintiffs indicate that the pursuit of this action in the Bankruptcy Court will promote judicial economy, and will prevent what otherwise would be an unnecessary multiplicity of actions. Again the Court agrees. Accordingly, as announced at the hearing of the motion, the decision of this Court is that it has jurisdiction over the causes of action in this complaint.

### 2. *Jurisdiction over Plaintiffs Claims against Aames, the Cohens, and Jomar In re Foremost*

■ Defendants correctly point out that 11 U.S.C. § 727(a)(1) provides a discharge under Chapter 7 of the Bankruptcy Code

only to an individual debtor. Corporations are not so favored, since once a corporation is liquidated, it is unnecessary to provide it with a discharge.

Based upon this premise, defendants again argue that there is no *nexus* between the bankruptcy proceedings of Foremost and the causes of action pressed by plaintiffs since the only possible connection to the bankruptcy case would be the question of dischargeability of debt. Since there is no such question as to Foremost, there is no basis for jurisdiction.

■ In this Court's view, defendants' arguments beg the question. There certainly is the question in the *Zamost* case as to whether plaintiffs claims are exempt from discharge. Both Zamost *and* Foremost are necessary parties to resolution of the issues raised in the complaint as indicated in section one of this discussion, hence the basis for jurisdiction does not vanish.

### 3. *Abstention*

Title 28 § 1471(d) provides that "in the interest of justice", a bankruptcy court may abstain from the exercise of its jurisdiction. Defendants urge that this Court should abstain from hearing plaintiffs' claims since they have nothing to do with the administration of the debtors' estates in bankruptcy for the reasons already set forth above. Defendants further urge abstention because the case requires resolution of certain questions under California law: namely the propriety of such disbursement by an escrow holder; the appropriateness of the alleged amendments to escrow instructions; the effect of the alleged misappropriation of the loan proceeds upon the lenders' conduct; the right of the trustee to institute foreclosure proceedings upon default in view of such a transaction; and the general extent of the fiduciary duties of an escrow holder under California law. Defendants conclude that California courts are in the best position to make such determinations.

■ Historically, the abstention doctrine has been invoked in five basic areas, by courts which have non-exclusive jurisdiction. They are:

1. Where it is necessary to determine the constitutionality of a state statute or administrative order under the federal Constitution in an area where the construction of the pertinent but unclear state law should be interpreted by state courts, which would, perhaps, obviate the necessity for such decision. This doctrine is known as the *Pullman* abstention doctrine in honor of *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See* 1A *Moore's Federal Practice*, ¶ 0.203[1] (2d Ed. 1980).

2. Where a state interest predominates, such as a case involving substantial state policies, for comity, or to achieve a healthy state-federal relationship. *See* 1A *Moore's Federal Practice*, ¶ 0.203[2] (2d Ed. 1980).

3. Where abstention will prevent interference in a state criminal prosecution. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); 1A *Moore's Federal Practice*, ¶ 0.203[2] (2d Ed. 1980).

4. Where there are unsettled questions of state law. *Thompson v. Magnolia Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), discussed *infra*. 1A *Moore's Federal Practice*, ¶ 0.203[3] (2d Ed. 1980).

5. Where a state action is pending, federal courts may stay or dismiss the case in the interest of judicial administration, comprehensive disposition of litigation, conservation of judicial resources, or fairness to the parties. 1A *Moore's Federal Practice*, ¶ 0.203[4] (2d Ed. 1980).

The case of *Thompson v. Magnolia Co., supra*, particularly dealt with the fourth area outlined above. The question confronting the court was ownership of the fee in the right of way of a railroad, and the determination of entitlement to the rights in the underlying gas, oil, and other mineral deposits. The law of Illinois, the *situs* state, was unclear on the subject in that there were conflicting decisions. Under those circumstances, the Supreme Court held that a state court should more properly

decide the issue than the bankruptcy court. At p. 483, 60 S.Ct. at p. 630 of its decision the Supreme Court stated:

" . . . (T)he proper exercise of . . . control [over the administration of an estate in its possession] *may*, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration." (Emphasis supplied.)

Congress recognized this constraint and acknowledged it in its enaction of Title 28 U.S. § 1471(d). In H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6401, legislative history indicates: "The subsection recognizes the exigencies that arise in such cases as *Thompson v. Magnolia Petroleum*, (citation omitted), in which it is more appropriate to have a State court hear a particular matter of State law."

The Supreme Court at a later date has also ruled that a federal court is *not* free to defer or decline jurisdiction in a diversity case merely because state law is unsettled. See *Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

Subsequent to the *Meredith, supra*, decision, the doctrine of *Thompson v. Magnolia Co., supra*, has been restricted to bankruptcy proceedings, and bankruptcy courts have followed that precatory doctrine only in exceptional circumstances. *See* 1A *Moore's Federal Practice*, ¶ 0.203[3] at 2134 (2d Ed. 1980); 1 *Collier on Bankruptcy*, ¶ 2.07 at 164 (14th Ed. 1974).

The defendants here have based their request for abstention on the contention that since the questions and issues involved arise under state law, then the state courts are the best forum for their determination. This may be a basis for abstention under the *Magnolia* doctrine if the issues require particular expertise that the bankruptcy court may not have. It is likely that the *Magnolia* doctrine may eventually erode with the broadened general jurisdiction of the bankruptcy court, as it becomes recognized as a court of general civil jurisdiction rather than merely a specialized court dealing solely with bankruptcy problems.

Some bankruptcy courts, since the enactment of the Bankruptcy Code, have invoked the doctrine of abstention under Title 28 U.S.C. § 1471(d). For example, see *In re Jewel Terrace Corp.*, 3 B.R. 36, 6 B.C.D. 28 (E.D.N.Y.1980), where the court abstained in an action between the debtor and a tenants' league because the controversy had been the subject of ongoing litigation in state court. However, there the court stated that if the issue had been presented to it prior to institution of the state court action, it would have assumed jurisdiction and not abstained. This view also was espoused in the cases of *In re Hawaii Mini-Storage Systems, Inc.*, 4 B.R. 489, 6 B.C.D. 86 (D.Hawaii 1980) and *In re Tidwell*, 4 B.R. 100, 2 C.B. C.2d 172 (N.D.Tex.1980).

A further indication of the intent of Congress through pertinent legislative history indicates that the broader jurisdiction of the bankruptcy court should be exercised without abstention where the bankruptcy court may be the only forum where all parties can be before the court. The House Report states that:

. . . "The bankruptcy courts will not abstain . . . when no other court, Federal, State or local, has jurisdiction over the proceeding in question." H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S. Code Cong. & Admin.News 1978, p. 6401.

That fits the case at bar since the bankruptcy court has original and exclusive jurisdiction of the question of whether the causes of action of the plaintiffs are exempted from discharge under § 523(a)(2). No state court can try that issue.

Resolution of that issue will require that matters of fact be tried in this court concerning the questions of fraud, Zamost's activities, and the consequent exemptability of plaintiffs' claims. The same questions of fact would be duplicatively tried in state court if an action involving the other defendants were also pursued there. Judicial economy and the avoidance of multiplicity

**864**

of actions, therefore, militate against abstention.

Finally, the state law questions do not appear to be so complicated, unclear, unsettled, or uniquely within the province of the state courts in terms of state policy so as to require this Court to abstain from the exercise of its jurisdiction over all the defendants.

## CONCLUSION

An order will enter denying the defendants' Motion to Dismiss. Defendants will be given thirty days from the date of this Memorandum Decision within which to file their appropriate responsive pleadings.