In re George WILSON, Debtor.

Bankruptcy No. 87–04007F.

United States Bankruptcy Court, E.D. Pennsylvania.

April 27, 1988.

Geri H. Gallagher, Norristown, Pa., for debtor.

David R. Rosenfeld, Abrahams & Loewenstein, Philadelphia, Pa., for movant, Mary Lou Wilson.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

Mary Lou Wilson, estranged wife of the debtor George Wilson, has filed a motion for relief from the automatic stay or, in the alternative, for discretionary abstention. The debtor vigorously opposes these requests as does the standing chapter 13 trustee.[1] Resolution of this contested matter requires a determination whether, if ever, a bankruptcy court should hear a dispute concerning equitable distribution of marital property. Counsel for both parties have thoroughly briefed this issue and have stipulated to the relevant facts which may be summarized.[2]

### I.

On August 7, 1987, the debtor filed a voluntary petition in bankruptcy under chapter 13. Among his assets, the debtor listed his interest, as tenant by the entireties, in the real properties located at 1304 and 1308 DeKalb Pike, Lower Gwynedd, Pennsylvania. Excluding his wife, who is the movant herein, the debtor listed tax priority debts of approximately $20,000.00, a mortgage on the real estate estimated to total approximately $33,000.00, and unsecured debts of approximately $65,000.00. Mrs. Wilson is listed as an unsecured creditor in the amount of $45,000.00.[3] The proposed chapter 13 plan calls for payment of 100% to all creditors. The debtor proposes that the plan be funded, *inter alia,* by the "liquidation" (sale) of the real estate.

Mary Lou and George Wilson were married on August 16, 1956 and separated in August 1982. The one surviving child of the marriage currently resides with Mrs. Wilson and both live in the Lower Gwynedd real estate; the debtor currently resides in Philadelphia. In September 1982, shortly after their separation, the debtor initiated divorce proceedings in the Montgomery County Court of Common Pleas, No. 82-13869. His wife responded and requested, *inter alia,* support and alimony. Both parties sought equitable distribution of the marital property.

Pursuant to the local court rules of the Montgomery County Court of Common Pleas, Rule 1920.51, a Master was appointed to hear evidence on the divorce and equitable distribution matters. Although bifurcation of the two issues may sometimes occur, *see e.g., Wolk v. Wolk,* 318 Pa.Super. 311, 464 A.2d 1359 (1983), it appears from the docket entries, (*i.e.* 12/1/86), that there was no bifurcation in this instance. Thus, although both parties are seeking a divorce decree, such a decree has not been entered.

After hearing evidence on the equitable distribution question, including a review of the requisite "inventory and appraisement" forms submitted by both parties, the Master issued his report on equitable distribution. Both sides filed exceptions to this report, and the matter was scheduled to be heard by the Honorable Horace A. Davenport of the Court of Common Pleas in Montgomery County on August 12, 1987. The filing of the debtor's bankruptcy petition stayed that hearing.

Ms. Wilson then filed a motion for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d) arguing that "cause" exists for granting relief. Alternatively, she contends that this court should abstain pursuant to 28 U.S.C. § 1334(c)(1). By virtue of 11 U.S.C. § 362(b)(2) and the legislative history surrounding section 362(d), (H.R.

---

1. Counsel for the standing trustee appeared at the hearing held on this motion and noted his opposition. However, the trustee has not submitted a memorandum in support of his position.

2. This Memorandum Opinion constitutes the requisite findings and conclusions mandated by Bankr.Rules 7052, 9014.

3. The movant has not raised any issues under 11 U.S.C. § 109(e).

Rep. No. 95–595, 95th Cong. 1st Sess. at 343 (1977)), [1978] U.S.Code Cong. & Ad. News 5787 the parties agreed that the divorce, alimony and support matters might continue in state court unfettered by this bankruptcy proceeding. However, the debtor argues that the equitable distribution of marital property should be decided by this court because its outcome is critical to the success of the debtor's proposed chapter 13 plan. The movant contends with equal vigor that this court has no expertise in distributing equitably the marital property and should leave that matter to state court. Each party cites decisions supporting his or her position.

## II.

The movant cannot and does not dispute that, by virtue of the debtor's bankruptcy filing, 28 U.S.C. § 1334(d) grants exclusive jurisdiction of all property interests of the debtor to the district court. *Accord e.g. In re Modern Boats, Inc.*, 775 F.2d 619 (5th Cir.1985). This exclusive jurisdiction has been transferred to this bankruptcy judge pursuant to 28 U.S.C. § 157(a). *Raff v. Gordon*, 58 B.R. 988, 991 n. 5 (E.D.Pa.1986) (blanket referral of bankruptcy cases has been made in this district). *See also In re Heslar*, 16 B.R. 329 (Bankr.W.D.Mich.1981) (construing former 28 U.S.C. § 1471(e)). The debtor's interest in entireties property (*i.e.*, the marital residence) is part of the debtor's estate by virtue of the broad delineation of property of the estate found in 11 U.S.C. § 541(a). *Napotnik v. Equibank & Parkdale Savings Ass'n*, 679 F.2d 316 (3d Cir.1982). *See also* Kalevitch, *Some Thoughts on Entireties in Bankruptcy*, 60 Am.Bankr.L.J. 141 (Spring, 1986).[4] This interest passes to the trustee upon commencement of the case.[5]

In addition to controlling the debtor's various property interests, the Bankruptcy Code by virtue of 11 U.S.C. § 363(f), (h)

allows the trustee,[6] in certain circumstances, to partition and sell entireties property including the interest of the nondebtor owner.

Since it is the duty of both this bankruptcy court and the bankruptcy trustee to assert control over all property of the estate, there can be little question that pending state court equitable distribution of property proceedings are stayed by the bankruptcy filing of one spouse. *E.g. In re Ziets*, 79 B.R. 222 (Bankr.E.D.Pa.1987) *aff'd* C.A. No. 87–7756 (E.D.Pa., February 25, 1988); *In re Johnson*, 51 B.R. 439 (Bankr.E.D.Pa.1985); *In re Murray*, 31 B.R. 499 (Bankr.E.D.Pa.1983). *See also Missouri v. United States Bankruptcy Court of the Eastern District of Arkansas*, 647 F.2d 768 (8th Cir.1981) *cert. denied* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Indeed, the Superior Court of Pennsylvania has acknowledged the primacy of bankruptcy courts in controlling marital property when one spouse has filed for bankruptcy. *Taylor v. Taylor*, 349 Pa. Super. 423, 503 A.2d 439 (1986).

Although I accept the debtor's argument that this court obtained exclusive jurisdiction over the entireties property when this bankruptcy case commenced, I reject his position that the outcome of equitable distribution should differ because of his bankruptcy filing. As the Supreme Court explained in discussing the Bankruptcy Act of 1898

... Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and

---

**4.** As this case is brought under chapter 13, the definition of property of the estate is even broader than that established by § 541. 11 U.S.C. § 1306.

**5.** While the property interest passes to the trustee, a debtor may remain in possession, 11 U.S.C.

§ 1306(b); moreover, the debtor may regain title upon confirmation. 11 U.S.C. § 1327(b).

**6.** The debtor possesses the trustee's power under § 363(f). 11 U.S.C. § 1303.

federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) *quoting Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961) (footnote omitted).[7]

The two premises of the *Butner* holding apply when analyzing 11 U.S.C. § 541. The extent of the debtor's estate is generally defined by nonbankruptcy law, typically state law. *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986); *In re Stephen Smith Home for The Aged, Inc.,* 80 B.R. 678 (E.D.Pa.1987); *In re Loughnane,* 28 B.R. 940 (Bankr.D.Colo.1983). 4 *Collier on Bankruptcy* ¶ 541.02[1] (15th ed. 1987). Furthermore, this property interest is generally determined as of the time the bankruptcy petition is filed. *In re Stephen Smith Home for The Aged, Inc.,* 80 B.R. at 686; *In re West,* 64 B.R. 738, 744 n. 12 (Bankr.D.Or.1986).[8] Therefore, whichever forum decides the issue of equitable distribution must apply Pennsylvania law. *E.g., In re Ziets; In re Palmer,* 78 B.R. 402 (Bankr.E.D.N.Y.1987); *In re Johnson.*

The relevant state statute which governs the equitable division of marital property is found in § 401 of the Pennsylvania Divorce Law of 1980, 23 P.S. § 401(d):

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

Although not mentioned in § 401(d), § 401(b) makes equitable distribution dependent upon a decree terminating the marriage, either by divorce or annulment.[9]

The debtor suggests that 11 U.S.C. § 363(j) grants to this court the power to equitably divide the marital property in whatever manner it chooses, irrespective of state law. I disagree; this subsection permits the division of sale proceeds "according to the interests of such spouse or co-owners, and of the estate." The interests of each spouse are defined by state law. To the extent the trustee has a property interest, his interest is derived from and equivalent to the debtor's interest at the time the case commenced:

The courts are frequently moved to reassert the general rule that the Act "does not vest the trustee with any better right or title to the bankrupt's prop-

---

**7.** The debtor has suggested no federal interest which could mandate a result different from that established by state law.

**8.** The provisions of § 1306 expanding the concept of estate property in chapter 13 cases to

after acquired property do not affect the resolution of the instant dispute.

**9.** Marital property is defined in 23 P.S. § 401(e).

erty than belongs to the bankrupt or his creditors at the time when the trustee's title accrued." This is true in that the bankruptcy trustee is not a bona fide purchaser or encumbrancer for value, but takes the property subject to all valid claims, liens and equities. When it is said, however, that the trustee "stands in the shoes of the bankrupt" and has no better title than the bankrupt had at the time of the filing of the petition, it is to be remembered that these general pronouncements are subject to well recognized exceptions created by the Bankruptcy Act itself, through which the trustee is given powers to assert claims against property in the hands of others where the bankrupt would be estopped to act and, in some cases, where there are no creditors who could assert such claims.

4A *Collier on Bankruptcy* ¶ 70.04 at 55–57 (14th ed. 1978) (footnotes omitted). *Accord e.g. In re Stephen Smith Home for the Aged, Inc.* (debtor's right to proceeds from charitable trusts fixed as of the time of filing). *Cf. Brown v. Brown*, 38 Am.B.R. 356 (Sup.Ct., Ky.1916) (trustee takes title subject to divorced wife's right to occupy residence). Section 363 may grant the trustee the power to sell the interest of the nondebtor, in some circumstances, but does not increase the trustee's portion of the proceeds beyond that which the debtor had at the time the case commenced.[10]

■ In order to resolve this dispute, another issue implicitly raised by the debtor must be addressed: whether the nondebtor spouse has a cognizable interest in equitable division if a bankruptcy petition is filed prior to the state court determination.[11] The *Ziets* court simply notes that a final determination of the division of property in state court, prepetition, would not be reviewable in bankruptcy court. Yet

implicit in decisions such as *Ziets; In re Palmer; In re Johnson* is that the state law right to seek equitable distribution "vests" at the time the divorce proceeding is commenced and equitable distribution is requested. I agree; my review of 23 P.S. § 401, particularly provisions such as § 401(e)(5), supports this position. *Accord In re Fisher*, 67 B.R. 666, 668 (Bankr.D. Colo.1986) (under Colorado law, rights are vested upon the filing of a divorce petition).

Thus, in determining whether to abstain or to grant relief from the stay, I preliminarily conclude that: this court has jurisdiction over the marital property; the rights of the nondebtor spouse to seek equitable distribution arose upon her prepetition filing for equitable distribution; and that state law governs the respective rights of the parties.

### III.

The movant contends that the application of the state law provision governing equitable distribution, 23 P.S. § 401(d), is better left to the state courts which are well versed in its meaning. She argues therefore that discretionary abstention under 28 U.S.C. § 1334(c)(1) is appropriate.[12] This very question was recently addressed by my colleague, Judge Scholl, in *In re Ziets* which concluded that discretionary abstention was not appropriate under circumstances similar to those here.

■ *Ziets* correctly focused upon whether the state law surrounding equitable distribution is unsettled. If so, comity and federalism concerns implicit in § 1334(c)(1) militate toward abstention. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). *Accord Ronix Corp. v. City of Philadelphia*, 82 B.R. 19, 20 (E.D.Pa.1988). The requirement that a bankruptcy court apply state law, by itself, does not justify discretionary

---

**10.** Whether the provisions of § 363(f) or (h) should be utilized may depend upon the result of the property division. *In re Johnson*, 51 B.R. at 443–44.

**11.** This issue is germane because one purpose of the automatic stay is to prevent a creditor from improving his position, postpetition, at the expense of other creditors. *See Assoc. of St. Croix*

*Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982) (citing H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340 (1977)).

**12.** The movant does not suggest that mandatory abstention under 28 U.S.C. § 1334(c)(2) is warranted, so I shall not consider that issue.

abstention because abstention is a narrowly applied exception to the broad jurisdictional grant afforded bankruptcy courts. *Ronix Corp. v. City of Philadelphia; In re Earle Industries, Inc.,* 72 B.R. 131, 134 (Bankr.E.D.Pa.1987); *In re Krupke,* 57 B.R. 523, 528 (Bankr.W.D.Wisc.1986). *Ziets* concluded that the state law of equitable distribution in Pennsylvania is neither unsettled nor difficult, and I must agree. The law has been in effect since 1980, with many reported decisions concerning its provisions. *Compare In re Stephen Smith Home for the Aged, Inc* (no reported decisions construing relevant state statute); *In re Kaplan,* 18 B.R. 1018 (Bankr.E.D.N.Y.1982) (state law of equitable distribution but two years old). Moreover, bankruptcy courts which are courts of equity, *see generally Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), are familiar with applying equitable principles. *E.g., In re N & D Properties Inc.,* 799 F.2d 726 (11th Cir.1986); *In re Ludwig Honold Manufacturing Co.,* 46 B.R. 125 (Bankr.E.D.Pa.1985) (analyzing the equitable subordination provisions of 11 U.S.C. § 510(c)).

■ However, discretionary abstention may be appropriate even when state law is not unsettled. For example, abstention may be warranted in order to permit a dispute to be heard by a specialized forum with expertise regarding the matter. *See Stephen Smith Home for the Aged, Inc.; Matter of Bob Lee Beauty Supply Co,* 56 B.R. 17 (Bankr.N.D.Ala.1985); *In re Eastern Consolidated Utilities, Inc.,* 17 B.R. 809 (Bankr.E.D.Pa.1982); *In re Remington,* 14 B.R. 496 (Bankr.D.N.J.1981). Some of those bankruptcy courts which have decided not to resolve equitable distribution of property disputes have explicitly or implicitly viewed state courts as uniquely qualified to hear such disputes. *Matter of Baker,* 75 B.R. 120, 121 (Bankr.D.Del. 1987); *In re Kaplan; In re Heslar,* 16 B.R. 329 (Bankr.W.D.Mich.1981).

The movant has heavily relied upon this concept and cites to decisions such as *Heslar* as well as the oft-repeated statement of

*In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985):

> It is appropriate for bankruptcy courts to avoid incursions into family law matters "out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."

(quoting *In re Graham,* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)).

I certainly must agree that it was never congressional intent to authorize bankruptcy courts to function as federal domestic relations courts. 11 U.S.C. § 362(b)(2). *Cf. Thompson v. Thompson,* — U.S. —, 108 S.Ct. 513, 519, 98 L.Ed.2d 512 (1988) (custody matters are traditional state court matters which federal courts have little expertise to resolve). Having noted this though, I must also recognize that there is a spectrum of domestic relations issues— divorce, custody, support, alimony, property division—some of which may have a greater impact upon the administration of a bankruptcy case than do others. The *MacDonald* decision is a good example for it concerned modification of a support decree, not property distribution.

Bankruptcy courts have traditionally and routinely interpreted state law in order to resolve disputes in bankruptcy cases and administer the estate. "This interpretation is undertaken by the bankruptcy court and normally does not implicate abstention concerns." *In re Stephen Smith Home for the Aged, Inc.,* 80 B.R. at 682–83. *See Missouri v. United States Bankruptcy Court of the Eastern District of Arkansas.* Such reasoning is implicit in *Ziets* which was just affirmed by our district court.

Were Pennsylvania law similar to Michigan law by including marital misconduct as a factor in dividing marital property, I might agree with the *Heslar* decision and conclude that abstention is appropriate here. Since divorce proceedings are clearly within the province of state courts, 11 U.S. C. § 362(b)(2), and marital misconduct may serve as grounds for divorce, it makes eminent sense to allow one forum to determine all legal disputes dependent upon the same

factual circumstances. However, in Pennsylvania the equitable distribution law expressly forbids consideration of marital misconduct. 23 P.S. § 401(d). *Accord La Buda v. La Buda,* 349 Pa.Super. 524, 503 A.2d 971 (1986).

Although the issue is very close, it seems inappropriate to determine that discretionary abstention is warranted in all circumstances where equitable distribution of marital property is concerned. *Ziets.* I reach this conclusion not only for reasons mentioned above but also because Congress has differentiated between various domestic disputes. 11 U.S.C. § 362(b)(2) states that the automatic stay does not apply to:

> the collection of alimony, maintenance or support from property that is not property of the estate.

Similarly, 11 U.S.C. § 523(a)(5) and 1328(a)(2) make nondischargeable debts arising out of alimony, maintenance and support. *See e.g., In re Smith,* 61 B.R. 742 (Bankr.D.Mont.1986); *Stamper v. Stamper,* 17 B.R. 216 (Bankr.S.D.Ohio 1982). Neither provision includes equitable property division; yet, the position of the movant is that no equitable distribution dispute should be heard in bankruptcy courts. To accept this position would be, in essence, to judicially legislate an additional ground for mandatory abstention and would make the automatic stay virtually irrelevant to such disputes. As Congress was unwilling to enact such provisions, it would be inappropriate to judicially create them under the guise of § 1334(c)(1).[13]

■ Therefore, whether a court should abstain from hearing an equitable distribution dispute must be decided upon consideration of the totality of the circumstances specific to each case. *Ziets.*

## IV.

The underlying premise of *Ziets* is that relief from the automatic stay, under § 362(d), should not be ordered simply because the movant wishes to litigate the question of equitable distribution in state court. Otherwise, § 362(b) would have so stated. *In re Schock,* 37 B.R. 399 (Bankr. D.M.D.1984). *See also In re Murray,* 31 B.R. 499 (Bankr.E.D.Pa.1983); *In re Cunningham,* 9 B.R. 70 (Bankr.D.N.M.1981). As with abstention, the question of relief from the stay must be decided on a case by case basis.

At least as argued by the movant here, the same facts and policies which support her contention that abstention is appropriate, support her contention that "cause" exists for relief from the stay. As a result, I need not decide whether the particular facts surrounding this contested matter support discretionary abstention; this dispute falls squarely within a well recognized category of decisions under which relief from the stay is justified.

Part of the legislative history of 11 U.S.C. § 362(d) includes the following:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong.2d Sess. 50, *reprinted in* [1978] U.S. Code Cong. & Ad. News 5836.

Based upon this legislative history, courts have concluded that it is within the sound discretion of bankruptcy courts to grant relief from the automatic stay when the bankruptcy petition was filed on the eve of the resolution of pending prepetition litigation. *Matter of Holtkamp,* 669 F.2d 505 (7th Cir.1982). *See In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir. 1986); *In re Olmstead,* 608 F.2d 1365 (10th Cir.1979); *In re Hoffman,* 33 B.R. 937 (Bankr.W.D.Okla.1983); *In re Philadelphia Athletic Club,* 9 B.R. 280 (Bankr.E.D. Pa.1981). *See also In re Borbridge,* 81

---

**13.** 28 U.S.C. § 1334(c)(1) is derived from former 28 U.S.C. § 1471(d) and is not a product of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). 28 U.S.C. § 1471(d) was enacted contemporaneously with 11 U.S.C. § 362(b).

B.R. 332 (Bankr.E.D.Pa.1988). As a leading commentator has noted, relief from the automatic stay, for "cause" under 11 U.S.C. § 362(d)(1) may be granted when "the liquidation of a claim may be more conveniently and speedily determined in another forum." 2 *Collier on Bankruptcy* ¶ 362.07[3] (15th ed. 1987).

█ In the instant matter, the Court of Common Pleas had scheduled a hearing on the exceptions filed to the Master's report concerning equitable distribution of property. That hearing was stayed because the debtor filed for bankruptcy just a few days prior to the hearing. Since I have previously concluded that, irrespective of the forum, the dispute is governed solely by 23 P.S. § 401, it seems appropriate to allow the matter to be decided by the forum initially chosen by both parties. The matter was about to be resolved in state court, and section 362(d)(1) supports the result that it should still be resolved there.

To the extent the trustee wishes to participate as current "owner" of the property at issue, he is free to raise the standing question with the state court. I cannot assume that state court will ignore the applicability of relevant federal law or the legitimate concerns of the trustee. *See Matter of Davis*, 691 F.2d 176, 178 (3d Cir.1982) ("We decline to presume that the judges of Delaware will disregard the obligations imposed upon them by the federal constitution.") Indeed, 23 P.S. § 401(d)(10) lists among the relevant factors to be considered in equitably distributing the property: "the economic circumstances of each party at the time the division of property is to become effective."

However, while I agree with the movant that the state court, in this instance, should decide the property rights of the marital couple, it remains for this court to administer the debtor's estate. Therefore, once the decree is entered, the parties will have to return here so that implementation of that decree can be made in a manner consistent with the rights of the debtor, trustee, and all creditors. *See In re Palmer; In re Fisher; In re Johnson.*

An appropriate order shall be entered.

ORDER

AND NOW, this 27 day of April, 1988, upon consideration,

it is hereby ORDERED that relief from the stay is granted to Mary Lou Wilson to the extent necessary to have the question of equitable distribution of marital property resolved in state court.